IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN COLEMAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.

_____/

No. C 08-03789 WDB

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT; ORDER FOR REMAND**

Plaintiff John Coleman moves for summary judgment, seeking judicial review of a final decision by Defendant Michael J. Astrue, the Commissioner of Social Security, finding that Plaintiff was not disabled and denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits. Defendant opposes Plaintiff's motion and has filed a cross-motion for summary judgment, asking the Court to affirm the Commissioner's final decision. Pursuant to Civil Local Rule 16-5, the matter is deemed submitted for decision by this Court without oral argument. After careful review and consideration of the record and the papers submitted, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion.

## **PROCEDURAL BACKGROUND**

On March 3, 2005, Plaintiff filed an application for SSI benefits, alleging disability beginning on July 27, 2004, due to an injury to his left knee, followed by two operations. AR 113-23. Plaintiff's application was denied initially on June 10, 2005, and upon reconsideration on December 2, 2005. Plaintiff requested and received a hearing before an

administrative law judge. The Honorable Robert P. Wenton held a hearing on February 27, 2007, at which Plaintiff was represented by counsel, Joel Roberts. Plaintiff testified at the hearing, as did vocational expert Gerals Belchick, Ph.D. On April 9, 2007, Judge Wenton issued a written decision finding that Plaintiff was not disabled as defined by the Social Security Act and applicable regulations, and denying his request for SSI benefits. AR 55-60.

Plaintiff requested review of the unfavorable decision. On July 21, 2007, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's application for further proceedings upon concluding that "further vocational expert evidence is needed in order to determine whether there are jobs within the claimant's residual functional capacity which he can perform." AR 45.

Upon remand, Judge Wenton held a supplemental hearing on September 12, 2007. Plaintiff again was represented by Mr. Roberts and testified at the hearing. Vocational expert Stephen Davis also testified at the supplemental hearing. Judge Wenton held the record open until November 17, 2007, at counsel's request to allow submission of additional evidence. On December 14, 2007, Judge Wenton issued a decision upon remand denying Plaintiff's application. AR 14-20. On June 2, 2008, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner of Social Security. AR 5-8. Subsequently, Plaintiff, appearing pro se, filed this action seeking judicial review of the Commissioner's decision. Both parties consented in writing to proceed before a United States Magistrate Judge.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of disability insurance benefits only when the ALJ's determinations are based on legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted). "Substantial evidence" means more than a scintilla but need not be a preponderance; it is such evidence that a reasonable mind could accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). "If the evidence can support either

2

outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098, quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992).

## **DISCUSSION**

### **I.  APPLICABLE LAW - STEPS TO DETERMINING DISABILITY**

An SSI claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A), (B).

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520. The five steps are:

> **Step 1.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).
>
> **Step 2.** Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> **Step 3**. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> **Step 4.** Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).
>
> **Step 5.** Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the

3

> Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

*Tackett*, 180 F.3d at 1098-99. The burden of proof is on the claimant as to steps one to four. *Id.* at 1098. At step five, the burden shifts to the Commissioner. *Id.*

## II. ADMINISTRATIVE FINDINGS BY THE ALJ

Applying the sequential evaluative process following the hearing upon remand, the ALJ found at step one that there was no evidence that Plaintiff had engaged in any substantial gainful activity since July 27, 2004, the date of his application for benefits. A finding of disability would therefore not be precluded on the basis of work activity. AR 15.

At step two, the ALJ found that Plaintiff suffers from a medically determinable impairment, diagnosed as a left knee ruptured tendon, status post repair x 2. *Id*. The ALJ determined that Plaintiff's knee impairment "significantly limits his ability to perform basic work activities, as set forth at 20 C.F.R. 416.921, and must be deemed severe. 20 C.F.R. 416.920(c)." *Id*.

At step three, the ALJ found that Plaintiff did not suffer from any impairment that is either listed in, or medically equivalent to one listed in, the Listing of Impairments found at 20 C.F.R., part 404, Subpart P, Appendix 1. *Id.* at 15-16. The ALJ thus proceeded to determine Plaintiff's residual functional capacity in order to assess at steps four and five whether Plaintiff could perform his past relevant work or any other work considering his age, education and work experience.

At the time of the September 12, 2007, hearing, Plaintiff was 45 years old. Plaintiff had 2 years of college education, and worked in the past as a warehouseman, a credit analyst/collector and a sales support clerk. AR 15. Plaintiff reported that he has a permanent mobility limitation and cannot stand or sit for more than 10-15 minutes at a time. *Id.*

4

Turning to Plaintiff's medical records, the ALJ found that Plaintiff fell and injured his left knee in July 2004. AR 16, 220. An x-ray of his knee taken at that time confirmed a ruptured tendon. AR 16, 261. Plaintiff underwent left patellar tendon rupture repair in August 2004. AR 16, 251. By December 2004, Plaintiff was advised by his treating physician that he could bear weight as tolerated. AR 16, 321.

The ALJ further found that Plaintiff was diagnosed with another rupture after another fall and new injury to his left knee in February 2005. AR 16, 295. Plaintiff underwent a second rupture repair on March 25, 2005. AR 16, 226. The ALJ noted that in May 2005, less than two months after the second surgery, although Plaintiff lacked flexion, he could fully extend his knee when examined at Alameda County Medical Center. AR 16, 222. The ALJ also noted that during a physical therapy session conducted on May 31, 2005, Plaintiff could stand for two hours and walk for one hour. AR 16, 291.

After a consultative orthopedic examination of Plaintiff on May 24, 2005, Dr. Sherman reported inability to squat, mild swelling all about the left knee, and ½-inch wasting of the left thigh compared to the right thigh. AR 16, 265-267. Based on those findings and x-ray findings, Dr. Sherman concluded that Plaintiff's knee was anklyosed in full extension. AR 16, 267. Dr. Sherman also noted that Plaintiff could sit easily, and concluded that Plaintiff could do work involving unlimited sitting, lifting of 20 pounds frequently and 40 pounds occasionally and standing for 30 minutes at a time up to two hours, but that he could not squat, kneel or climb stairs or ladders, and that he needed to use a cane for walking outdoors and needed to hold his knee fully extended while sitting. AR 16, 267.

The ALJ noted that by June 2005, Plaintiff reported that he had no pain with walking, and that in July 2005, Plaintiff reported that he could walk for 1½ to 2 hours without an ambulatory device. AR 16, 284, 288. In September 2005, when Plaintiff was seen at Highland General Hospital, he was told that he could discontinue use of his knee brace, and in October 2005, he affirmed that he had stopped using the brace. AR 16, 282, 310.

The ALJ considered the November 1, 2007, Residual Functional Capacity Questionnaire completed by Dr. Slabaugh, an orthopedist at Alameda County Medical

Center, indicating that Plaintiff had findings of left knee joint instability, muscle atrophy and an abnormal gait. AR 16, 324. Dr. Slabaugh concluded that Plaintiff's impairment would allow him to sit for more than two hours at a time up to at least six hours per day, preclude him from sitting more than 30 minutes at a time up to about two hours per day, require unscheduled breaks two to four times per day lasting five to ten minutes each, allow lifting of 10 pounds frequently and 20 pounds occasionally, preclude crouching or ladder climbing, allow occasional stair climbing and rare stooping, and result in absence from work one day per month. AR 16-17, 325-28.

The ALJ considered the evidence of record, including Plaintiff's allegations of pain and other symptoms, and found that Plaintiff had the residual functional capacity to perform sedentary work, as defined at 20 C.F.R. 416.967(a), not involving crouching, kneeling or stooping, allowing for alternate sitting and standing occasionally, allowing for regular rest breaks without a need to walk around during breaks and allowing for an opportunity to extend his leg. AR 18. To the extent that Dr. Sherman's conclusions were inconsistent with this RFC finding, the ALJ gave no weight to those findings because they were based in part on Plaintiff's report in May 2005 that he could not bend his knee at all, which the ALJ found inconsistent with instructions that same month from Plaintiff's physical therapist to perform exercises which involved bending his knee. AR 17, 265-67, 292. To the extent that Dr. Slabaugh's conclusions were inconsistent with this RFC finding, the ALJ noted the absence of evidence that Dr. Slabaugh treated Plaintiff on an ongoing basis and noted that his conclusions were based on undated findings. AR 17, 323-29.

With respect to Plaintiff's statements about disabling symptoms, the ALJ found that despite Plaintiff's allegations of ongoing disabling knee pain and other symptoms, Plaintiff told the Social Security Administration in April 2005 that he was taking only Ibuprofen for his pain and that it relieved his symptoms within minutes, that he was able to go up and down stairs, do the laundry, walk to the market and use public transportation. AR 17, 124-27. The ALJ noted that Plaintiff also denied having any knee pain when he saw Dr. Sherman in May 2005. AR 17, 265. Upon review of Plaintiff's medical records, the ALJ found no evidence

that Plaintiff sought or received treatment for his alleged symptoms since 2006, other than the 2007 report from Dr. Slabaugh. AR 17. Finally, the ALJ noted that Plaintiff testified at the hearing that, before 2004, he had had extensive work activity, but his earning record showed a profound lack of earnings, suggesting either that he did not accurately report his income or that he misrepresented his record to the Administration. AR 17.

Having determined Plaintiff's residual functional capacity, the ALJ proceeded with steps four and five of the sequential evaluative process.

At step four, the ALJ accepted Dr. Belchick's testimony from the February 27, 2007, hearing that Plaintiff could not perform his past job as a warehouseman, the only one of Plaintiff's jobs that constitutes past relevant work. AR 18. Proceeding to step five, the ALJ noted that the burden shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which Plaintiff can perform consistent with his medically determinable impairment, functional limitations, age, education and work experience.

At the September 12, 2007, hearing, vocational expert Stephen Davis testified that if Plaintiff was only able to perform sedentary work that permitted (1) alternate sitting and standing every 30 minutes and (2) a 5 minute break to walk around at each position change, there would be no jobs in significant numbers in the national economy which Plaintiff could perform. AR 18, 430. Mr. Davis further testified that if Plaintiff missed more than one day of work per month he would be unable to perform unskilled sedentary work and would be unemployable. AR 18, 430.

The ALJ rejected such limitations on Plaintiff's ability to work as inconsistent with the medical evidence and Plaintiff's statements and conduct. The ALJ found that Plaintiff was able to perform sedentary work not involving crouching, kneeling or stooping, allowing for alternate sitting and standing, allowing for regular rest breaks without a need to walk around for 5 minutes and allowing for an opportunity to extend his leg. AR 18. The ALJ considered Mr. Davis's testimony that with the added work limitation of an opportunity for Plaintiff to extend his leg, his occupational base would be somewhat but not severely eroded

from the jobs available without such a limitation. AR 18. Mr. Davis testified that with these work limitations, Plaintiff could perform the jobs of table worker, or bench worker, with 300,000 such jobs existing in the national economy and 30,000 such jobs in the local economy (after a 25% erosion for the added work limitation of an opportunity for Plaintiff to extend his leg); assembler, with 309,500 such jobs in the national economy and 6,900 such jobs in the local economy (after 50% erosion for the added work limitation); and brake lining coater, with 67,500 such jobs in the national economy and 3,600 such jobs in the local economy (after 25% erosion for the added work limitation). AR 18, 419-22. Based on this testimony by Mr. Davis, the ALJ found that Plaintiff was able to perform work existing in significant numbers in the local and national economies, and concluded that Plaintiff was not disabled. AR 19.

## III. REVIEW OF THE ALJ'S DECISION

Plaintiff raises the following issues for review of the ALJ's decision: whether the ALJ properly relied on the November 1, 2007, examination report by Dr. Slabaugh; whether the ALJ properly discredited Plaintiff's subjective pain and symptom testimony; and whether Mr. Davis' testimony supported the ALJ's finding that Plaintiff could perform other work in the economy. Liberally construed, Plaintiff's motion alleges that the ALJ erred both in fixing Plaintiff's residual functional capacity and in concluding that Plaintiff is capable of performing jobs that exist in significant numbers in the local and national economies.

In sharp contrast, the Commissioner suggests remand for new and material evidence of mental impairment, discussed below.

### A. Examining Physician

Plaintiff challenges the assessment by examining physician, P. Slabaugh, M.D., in the November 1, 2007, "Arthritis Residual Functional Capacity Questionnaire." AR 323-29. Plaintiff suggests that Dr. Slabaugh's examination was inadequate because it was based on a "15-Minute, Cursory Exam" with an antiquated X-ray machine conducted "4 YEARS AGO!". Mot. at 10-11. In his July 27, 2005, Disability Report - Appeal, Plaintiff made a

similar complaint against Dr. Sherman, who conducted the x-ray examination of Plaintiff's left knee on May 24, 2005: "Dr. Sherman 5/24 used a 'antiquated' X-ray machine (actually his assistant used), and like most Docs at Highland Hospital in the Ortho. Clinic, did the most 'cursory' of examinations as PT Manager." AR 175. Following this examination, Dr. Sherman wrote a report including an evaluation of Plaintiff's x-ray: "X-rays of the left knee reveal the left knee to be held in full extension. There is no fracturing. There is mild generalized osteoporosis. The patella is properly positioned. No osteoarthritis." AR 267.

Despite the allegations that the equipment and examination were substandard, Plaintiff has not made any showing that the evidence was unreliable. Plaintiff has not shown, for example, that any other doctor who examined Plaintiff opined that he had greater limitations than those determined by Dr. Slabaugh. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Here, the medical records show that Dr. Slabaugh was the attending surgeon for Plaintiff's second knee surgery, performed on March 25, 2005, AR 226, as well as the consultative physician. Dr. Slabaugh opined that Plaintiff's impairment would allow him to sit for more than two hours at a time up to at least six hours per day, preclude him from sitting more than 30 minutes at a time up to about two hours per day, require unscheduled breaks two to four times per day lasting five to ten minutes each, allow lifting of 10 pounds frequently and 20 pounds occasionally, preclude crouching or ladder climbing, allow occasional stair climbing and rare stooping. AR 16-17, 325-28. Dr. Slabaugh also opined that Plaintiff's impairment would likely result in absence from work about one day per month. In the absence of any medical evidence or opinion to the contrary, and of any obvious infirmity or internal inconsistency, the only conclusion the Court may reach is that Dr. Slabaugh's opinion about Plaintiff's residual functional capacity is reasonably reliable and adequate to support the ALJ's finding that Plaintiff was capable of performing sedentary work not involving crouching, kneeling or stooping, allowing for alternate sitting and standing occasionally, allowing for regular rest breaks without a need to walk around during breaks and allowing for an opportunity to extend his leg.

9

**B. Plaintiff's Subjective Pain and Symptom Testimony**

Plaintiff contends that the ALJ did not properly credit his testimony and reports of pain and other symptoms when determining Plaintiff's residual functional capacity. At the February 27, 2007, hearing, the ALJ questioned Plaintiff about his ability to bend his left knee. The ALJ referred to the report from Dr. Sherman's examination on May 24, 2005, which indicated that Plaintiff would not bend his left knee. AR 265, 267, 366. The ALJ also referred to the physical therapist's notes dated May 26 and May 31, 2005, AR 291, and indicated that he "was confused about . . . why with the doctor your knee didn't bend at all and with the physical therapist just a few days . . . afterward he . . .had your knee bending up to, well, between 30 and 45 degrees." AR 367. The ALJ asked Plaintiff whether he could bend his knee at all, and Plaintiff responded that the physical therapist started the session by measuring how far Plaintiff's knee would bend by actually supporting bending of the knee. After about an hour of manipulation and medical therapy, such as massage and heat, the physical therapist again measured how far the knee would bend, reporting 41 percent of flexion. Plaintiff explained that at the beginning of a therapy session, his knee would only bend at about half of what was measured at the end of the session. AR 367. Plaintiff also admitted that his knee had some flexion, but said that he experienced pain when the therapist would bend his knee. AR 368.

The ALJ further reviewed Plaintiff's therapy records, noting that "by October [20, 2005], they said knee flexion limited to 75 degrees on August 3 of '05," which was the date of Plaintiff's last visit to the physical therapist. AR 281-83, 368. The ALJ asked Plaintiff to comment on the status of his knee in October 2005, when he was discharged from outpatient service. Plaintiff answered as follows:

> I had received a prescription for a knee brace, a slip-on knee brace which I received from Lawrence Orthopedic which was a Velcro strap below and above the kneecap. And at that point, that's pretty much what I wore anytime I was out in public, anytime to avoid any potential slips and falls or additional accidents. The constraint being is that as of today I was told that any - - that while the knee, you know, could get a certain amount of flexibility with physical therapy, that the muscle atrophy would be a medical contingent that I will always have to deal with and the only way that I could get some equal

10

> degree as to the right leg would have to be a three to four time a week session with a sports medicine facility and/or specialist to attempt that. But with that said, the problem being is that - - or the catch 22 is that then it would probably endure more pain in the knee and potentially the long-term outcome of arthritis. So it's - - while I could get the muscle back in my knee - - leg to support the knee, I probably could do shorter longer term damage to the knee. But if I don't do anything to the knee at all, the leg will atrophy but the - - and the pain will subside.

AR 368-69. The ALJ noted at the hearing that the Plaintiff appeared to walk without any apparatus, and Plaintiff explained that he had a prescription for a full knee brace that was personally fitted for his leg. AR 369. The ALJ also noted that Plaintiff was examined in June 2006, and the records indicated that Plaintiff had full passive range of motion, i.e., the doctor could bend Plaintiff's knee as much as necessary. AR 307, 371. Plaintiff added that a physical therapist could manipulate his knee to bend more than he could tolerate himself. AR 371. Plaintiff also testified that he could not sit for long periods because he constantly had to shift his weight, and could not keep his leg straight or bent for very long periods. AR 397.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586; 2009 WL 1941485 at * 3 (9th Cir. No. 06-16817, July 8, 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. Second, if Plaintiff meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id*. at 1036.

Here, the ALJ did not explicitly state his finding as to the first step of the credibility analysis, namely whether Plaintiff presented objective medical evidence of an underlying impairment which could reasonably have caused some degree of the alleged symptom. Rather, the ALJ's finding (at step two of the sequential evaluation process) that Plaintiff suffered from a medically determinable impairment, leads the Court to infer that the ALJ

11

concluded that Plaintiff had presented medical evidence that he suffered an underlying impairment that might cause the kinds of symptoms about which Plaintiff testified. Therefore, we turn to: did the ALJ offer clear and convincing reasons for rejecting Plaintiff's testimony about pain and other symptoms affecting his ability to work. AR 17.

"To support a lack of credibility finding, the ALJ was required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" *Vasquez*, 2009 WL 1941485 at \*4 (quoting *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993)). The ALJ discredited Plaintiff's subjective pain and symptom testimony for the following reasons: (1) despite Plaintiff's allegations of disabling pain, he reported in April 2005 that he was taking only Ibuprofen and that it relieved his symptoms within minutes; (2) Plaintiff told Dr. Sherman in May 2005 that he did not have any knee pain; (3) Plaintiff reported in April 2005 that he was able to go up and down stairs, do laundry, walk to the market and use public transportation; (4) Plaintiff's medical records do not indicate that he sought or received any treatment or therapy since 2006; (5) Plaintiff's pre-injury earning record showed a "profound lack of earnings" that was inconsistent with his testimony that he had extensive work activity. AR 17.

The ALJ referred to an absence of evidence in the record that Plaintiff sought or received treatment since 2006, likely referring to several Clinic Progress Reports dated June 1, June 15, June 29, July 13, August 1, August 8, and October 3, 2006, which cited hip and knee pain as the reasons for Plaintiff's visits. AR 302-07.

If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not second-guess or re-weigh the evidence. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). At the February 27, 2007, hearing, the ALJ cited evidence in Plaintiff's medical records indicating that he reported no knee pain in May 2005, and that he had gained full passive range of motion in his left knee by June 2005. The ALJ also cited specific findings from the administrative record to support his credibility determination. AR 17. The Court concludes that this substantial evidence in the record supports the ALJ's conclusions

12

discrediting Plaintiff's testimony about the extent of his pain and other symptoms. *See Lingenfelter*, 504 F.3d at 1035.

### C. Vocational Expert Testimony

Plaintiff challenges the ALJ's reliance on the vocational expert's testimony that Plaintiff could perform other work in the national and local economies, referring to "archaic" statistics. Pl's Mot. to Strike at 10. The Commission may sustain its burden at step five by posing hypothetical questions to a vocational expert that are based on a claimant's RFC. The vocational expert may give evidence about jobs that a hypothetical employee, with the same RFC as the claimant, would be able to perform. *See* 20 C.F.R. §§ 404.1520(f). A vocational expert's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The hypothetical questions posed, however, must be based on an RFC for which there exists substantial support in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). Plaintiff offers no cognizable basis here to challenge Mr. Davis's testimony in response to hypotheticals posed by the ALJ and by Plaintiff's counsel. Having carefully reviewed the hearing testimony, however, we conclude that the hypotheticals as framed by the ALJ were not sufficiently supported by the record.

In order for the testimony of a vocational expert to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, that are supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). At the February 27, 2007, hearing, the vocational expert, Dr. Belchick, was asked to assume that Plaintiff was limited to sedentary work with no crouching, kneeling or stooping. AR 397-98. Dr. Belchick responded that under those assumptions, Plaintiff could perform any kind of bench assembly or bench packing jobs because they do not involve significant use of the lower extremities. AR 398. When adding the limitation of keeping his leg extended, not elevated, while sitting, Dr. Belchick opined that the added limitation would not be a major problem, but did not testify as to the erosion of jobs with such a limitation. AR 401. In his April 9, 2007, decision, the ALJ accepted Dr. Belchick's testimony that even

13

if Plaintiff needed to extend his knee while working, he could still perform the jobs of bench assembler and bench packer. AR 58.

On appeal, the Appeals Council found that "[t]here is no job of bench packer cited in the Dictionary of Occupational Titles and no packer jobs permit a sedentary residual functional capacity in the DOT. Therefore, further vocational expert evidence is needed in order to determine whether there are jobs within the claimant's residual functional capacity which he can perform." AR 45. Upon remanding the case for further findings, the Appeals Council ordered the ALJ to do the following:

> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

AR 46.

The ALJ held a further hearing on remand on September 12, 2007, with vocational expert Davis testifying. When prohibitions of crouching, kneeling, and stooping were the only limitations on sedentary work included in the hypothetical, Mr. Davis opined that Plaintiff would be capable of work as a table worker, or bench worker, or in assembler positions, or as a brake lining coater, all of which were listed as unskilled sedentary jobs in the DOT. AR 418-21. With the added limitation of keeping one leg extended while sitting, whether resting on the ground or slightly elevated on a box, Mr. Davis testified that the number of available table worker and brake lining coater jobs would be eroded by 25 percent, and the assembler positions would be eroded by 50 percent. AR 422-23.

When Plaintiff's attorney added frequent absenteeism (missing more than two days of work per month) to the hypothetical, Mr. Davis testified that a person who was absent more

than one day a month would lose his job. AR 425-26. Mr. Davis' testimony on this point was consistent with Dr. Belchick's testimony, who had testified that more than two days of absence from work per month would completely erode the job base. AR 404-05. The ALJ did not accept this limitation on Plaintiff's attendance at work, despite evidence in Plaintiff's medical records indicating that his treating physician recommended continuing physical therapy as of September 15, 2005, and that Plaintiff could not maintain regular attendance at work through July 29, 2005, due to regular physical therapy sessions. AR 204, 310 (9/15/2005 progress report). The ALJ held that this absenteeism limitation was "inconsistent with the medical evidence and the claimant's statements and conduct." AR 18. In making this finding, the ALJ referred to the absence of evidence that Plaintiff had sought or received any treatment since 2006. He did not address Plaintiff's counsel's argument that Plaintiff had been regularly attending physical therapy sessions at least up to July 29, 2005, and would not have been able to work at least up to that date.

The ALJ's decision to reject the limitation of work absenteeism more than once a month for the claim period from July 27, 2004, to August 3, 2005, is not supported by substantial evidence in the record. The ALJ made no findings as to Plaintiff's ability to work from the time of his first injury, July 27, 2004, to May 24, 2005, when he was evaluated by Dr. Sherman. The ALJ himself noted, however, that the record contained evidence that Plaintiff ruptured his left patellar tendon on July 27, 2004, for which he underwent surgery on August 16, 2004. AR 16 (citing AR 220, 251). Plaintiff was discharged from the hospital after this surgery on August 17, 2004. AR 245. It is thus apparent that Plaintiff would have missed more than one day of work during the one month period after his knee injury, and would not have been able to perform other work, pursuant to Mr. Davis' testimony.

The ALJ noted that Plaintiff's treating physician advised in December 2004 that Plaintiff could bear weight as tolerated, AR 321, but the ALJ made no finding as to whether Plaintiff was capable of other work at that time. The treating physician noted that Plaintiff was scheduled for physical therapy on December 15, 2004, at which time the physical therapist recommended physical therapy once a week for ten visits. AR 298. Plaintiff's

medical records indicate that Plaintiff attended another PT session on December 29, 2004, then called the physical therapist on February 16, 2005, to inform that he had fallen and reinjured his knee. AR 295-96.

Plaintiff's medical records indicate that after his second surgery on March 25, 2005, his knee was immobilized through May 14, 2005. Plaintiff had an initial physical therapy evaluation on May 26, 2005, then attended physical therapy sessions later that year on May 31, June 2, June 6, June 9, June 16, June 23, June 28, July 5, July 14, July 20, July 29, and August 3. By rejecting the limitation of missing more than one day of work per month, the ALJ relied on a hypothetical that did not include all of Plaintiff's functional limitations from his two injuries, two surgeries, and his series of physical therapy sessions, as documented in the record. *Thomas*, 278 F.3d at 956. The Commissioner's determination that Plaintiff was not disabled during the period from July 27, 2004, to August 3, 2005, is not supported by substantial evidence in the administrative record as a whole. We therefore VACATE the Commissioner's determination that Plaintiff was ineligible for SSI benefits during the period from July 27, 2004, to August 3, 2005.

Where the evidence in the administrative record establishes that Plaintiff would have missed more than one day of work per month from July 27, 2004, to August 3, 2005, due to two knee injuries, hospitalization for two knee surgeries, knee immobilization, and his physical therapy schedule, and the vocational expert's testimony establishes that absenteeism of more than once a month would preclude all jobs, there are no outstanding issues to be resolved before a disability determination could be made as to that time period. We will therefore REMAND this case for the AWARD of benefits earned during the period from July 27, 2004, to August 3, 2005. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988).

The administrative record is less clear as to Plaintiff's functional limitations after August 3, 2005. On September 15, 2005, Plaintiff made a follow-up visit to the orthopedic clinic at Alameda County Medical Center, where the doctor advised Plaintiff to continue physical therapy. AR 310. Plaintiff's medical records show a series of visits to the Alameda

County Medical Center from June 1 to October 3, 2006, for his knee injury as well as acute hip pain. AR 302-07. The medical records also indicate that on October 3, 2006, the doctor ordered physical therapy to start in 2 months. AR 302. The Commissioner did not weigh this evidence in the final decision, and we conclude that this case must be REMANDED FOR FURTHER FINDINGS as to whether Plaintiff's medical condition, doctor visits, and recommended physical therapy would preclude Plaintiff from performing other work by causing him to miss more than one day of work per month after August 3, 2005, in light of the vocational expert's testimony about the effect of absenteeism.

When Plaintiff's counsel asked Mr. Davis to add to the hypothetical a limitation consisting of taking a five-minute break to stand every half an hour, Mr. Davis testified that standing up in position for five minutes would not have any impact on access to the jobs he had identified. AR 428-30. However, when the hypothetical was changed so that the five-minute break included walking around every half hour, Mr. Davis testified that the worker would lose ten minutes each hour, precluding all jobs. AR 430. The ALJ rejected this second hypothetical, as framed by Plaintiff's counsel, reasoning that the last added limitation was "inconsistent with the medical evidence and the claimant's statements and conduct." AR 18. Plaintiff cites no evidence in the record to support an added limitation of walking around for five minutes every half hour. Moreover, Dr. Slabaugh determined that Plaintiff did not need to walk around during an eight-hour day. AR 326.

In sum, even accepting Plaintiff's testimony that he experienced pain when bending his knee, Mr. Davis opined that with the added limitation of extending the leg, there were sedentary jobs in the national and local economies that did not involve crouching, kneeling or stooping, and that permitted alternate sitting and standing and regular five-minute rest breaks (without a need to walk around). We therefore conclude that the ALJ's finding that Plaintiff was capable of work requiring him to stand, but not walk around, for five minutes every half an hour was supported by substantial evidence.

Plaintiff also challenges the vocational expert's testimony that Plaintiff could perform jobs existing in significant numbers in the local and national economy, citing a 70%

17

unemployment rate for disabled persons, suggesting that the state's Department of Rehabilitation was not prepared to train Plaintiff for jobs that the vocational expert opined he could do, and pointing out that a job counselor from the state's Department of Rehabilitation had recommended jobs that did not exist. Mot. at 11. These are not the kinds of public policy considerations, however, that the law permits courts to address when reviewing a determination by the SSA. Rather, Congress has limited the courts' role to assessing whether substantial evidence in the record supports the ALJ's findings.

### IV. ALLEGATION OF NEW EVIDENCE OF MENTAL IMPAIRMENT

Defendant asks the Court to consider whether remand is warranted based on new and material evidence of possible mental impairment, relating back to the period preceding the Commissioner's final decision. Defendant offers no medical evidence of mental impairment to support remand for consideration of new evidence. *Cf. Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1983) (remanding for consideration of medical report concluding that claimant was "totally disabled from employment" in the relevant time period). The Court therefore DENIES Defendant's request to remand based on new and material evidence.

### CONCLUSION

For all of the foregoing reasons, the Court ORDERS as follows:

1. The Court GRANTS IN PART Plaintiff's motion for summary judgment. The Court VACATES the Commissioner's decision as to Plaintiff's claim for benefits for the period from July 27, 2004, to August 3, 2005, and REMANDS the action for the award of benefits consistent with this Order.

2. The Court further REMANDS the action for further administrative proceedings to determine whether benefits are due after August 3, 2005.

3. Except as otherwise granted herein, the remaining relief requested in Plaintiff's motion for summary judgment is DENIED.

4. Defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2009

*Wayne D. Brazil*
WAYNE D. BRAZIL
United States Magistrate Judge